## POINDEXTER v. GROVES et al.

United States District Court,
S. D. New York.

July 12, 1951.

Judgment Affirmed May 1, 1952.

Benjamin B. Sterling and Herman N. Rabson, New York City, for plaintiff.

Tompkins, Boal & Tompkins, New York City, Arthur M. Boal, New York City, of counsel, for defendants.

WEINFELD, District Judge.

In this Jones Act [1] action brought by the plaintiff administratrix to recover pecuniary damages for decedent's death caused by defendants' failure to provide prompt and adequate medical and surgical treatment, the jury returned a verdict in the sum of $50,000. The Court reserved decision on the defendants' motion to set aside the verdict insofar as it was based on excessiveness of the award. In the consideration of the motion the plaintiff is entitled to the benefit of the most favorable inferences to be drawn from the evidence. Burris v. American Chicle Co., D.C., 33 F.Supp. 104, affirmed 2 Cir., 120 F.2d 218.

The decedent left surviving him his widow and six children. Five of the children have been and are gainfully employed. Four of these are married and over 21, and one is unmarried, a daughter now 20 years of age. The sixth child is a boy 17, attending High School.

The decedent was a messman on a vessel owned by defendants who served meals to members of the crew and his base pay was $166 per month.

The widow testified that she received an allotment of $120 per month and in addition other sums which decedent drew from the balance of his pay upon the termination of each trip as well as such moneys as he earned between voyages; that the total amount which she received for support which covered dependent minors was between $200 and $250 per month.

The defendants, employers of the decedent, offered no evidence contradicting testimony that beyond the base pay of $166 per month, certain stated overtime payments were made to its employees in addition to work overtime under a union contract; nor was plaintiff's evidence disputed that it was customary for messmen at the

1. 46 U.S.C.A. § 688.

end of each voyage to receive tips from the men they served. These items could well account for the additional sums over the allotment which the widow swore she received. In any event the jury was instructed that the amount received by the widow for her support was a fact question to be determined by it. Granting to the plaintiff the most favorable inferences to be drawn from the evidence it may be assumed that the jury found that the payments were as she testified—between $200 and $250 per month.

Decedent was 46 years of age at the time of his death and considering his background, prior experience, education and training, his health and physical condition, it is unlikely there would have been any material improvement in the nature of his work or his earning capacity. Except for normal wage increases in his regular vocation, a decrease rather than an increase was indicated in his earning power during his life expectancy which was 23 years.

The widow was 43 years of age with a life expectancy of 26 years. The jury was instructed to consider the joint expectancy of both.

■ The jury was not charged on the subject of nurture for the two children under 21—one 17, and the other 20 and gainfully employed—as no proof was offered. Michigan Central Railroad Co. v. Vreeland, 227 U.S. 58, 73, 33 S.Ct. 192, 57 L.Ed. 417. Thus the only damages to be awarded "should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased."

Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L.Ed. 1117.

It is recognized, of course, that the mortality tables are intended as a guide and the jury was so advised. However, assuming that the jury found that decedent's life expectancy and his "work expectancy" were co-terminous, this would mean that for a period of 23 years, until he was 69 years of age, he would have earning capacity sufficient to provide for his dependents. Again, to give the plaintiff the benefit of the most favorable aspect of the testimony, we adopt the maximum amount of contribution—$200. to $250. per month or $2400. to $3000. a year.

The next problem then is to get the present value of this sum. " * * * the earning power of money must be considered and an amount determined, which, capitalized at a reasonable rate of interest, would yield annually the same income the person injured might have expected from the deceased, using the interest and part of the capital from year to year. To determine this amount standard tables prepared by actuaries may be used. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 * * *."

Sabine Towing Co. v. Brennan, 5 Cir., 85 F.2d 478, 481.

The Court at the request of the defendants (accepting the figures offered) charged the jury that the present value of an annuity of One Dollar for the joint expectancy of plaintiff and her husband is about $12. Counsel were requested to submit tables or other memoranda to aid the Court in its consideration of this application. What was requested was information which would show according to the tables of mortality the present worth of an annuity of $1 at various percentages for the joint lives of the decedent and his widow. Defendants' counsel submitted Inheritance Tax Calculations by Wolfe (2d ed. 1937) containing the American experience table with $3\frac{1}{2}\%$ and 4% force of mortality and annual values on joint lives. (p. 100, 112).[2]

Plaintiff's counsel submitted actuarial tables for immediate life annuities based on joint lives prepared by Federal Security Agency, United States Public Health Service and National Office of Vital Statistics (1947). Under the Wolfe table where the

2. The experience table contained in the first edition (1905) was used by the Court of Appeals, this Circuit, in the S/S Black Gull, 90 F.2d 619 and Briscoe v. United States, 2 Cir., 65 F.2d 404.

joint lives are 46 and 43 years, the "equal age" which may be equated to joint age, is 44.6 whereas under the Federal table the "equivalent equal age" is 44.59, so that for practical purposes under both the joint lives are measured by the same factor. While there is some difference between the two tables as to the present value of an annuity they do not vary substantially from the $12 figure which was the instruction given to the jury.

The Wolfe table for an equal age of 44.6 states the value of an annuity of $1 at 3½% as 12.199 and at 4% as 11.627.[3]

The Federal Security Agency table for equivalent age of 44.59 is, at 3%—14.3535 and at 4%—12.9257 (tables 41, 42).[4]

The difference in the present value of an annuity of $1 appears to be due to the experience upon which the tables are predicated. The Federal table is based on United States total white population 1939–1941, whereas the Wolfe table apparently covers the general population and is based on American experience over a different and earlier period.

Under present conditions 3 to 4% may be considered a fair rate of return without requiring more than average skill in investment. Thus, applying the two tables and using the maximum range, $200 to $250 a month, which the jury might have found, as the amount paid to dependents by decedent, we get the following result:

Present Value of an Annuity of $1.00 based on joint lives of 46 and 43 years at percentages indicated.

| Monthly | Yearly | Wolfe Table | | Federal Security Table | |
|---|---|---|---|---|---|
| | | 3½% or present value of 12.199 | 4% or present value of 11.629 | 3% or present value of 14.3535 | 4% or present value of 12.9257 |
| 200. | 2400. | 29,277. | 27,906. | 34,448. | 31,021. |
| 225. | 2700. | 32,937. | 31,395. | 38,754. | 34,899. |
| 250. | 3000. | 36,597. | 34,883. | 43,060. | 38,777. |

If we accept $250 per month or $3,000 a year, the outer limits of contribution by decedent, and applying an interest rate of between 3% and 4%, the range of the present value under both tables is between $34,883, approximately $35,000, to $43,060.

Probably a more realistic approach and one which would at the same time give plaintiff a most liberal acceptance of her testimony, in the light of her answer to interrogatories, that the amount decedent contributed to his dependents, was between $120 and $250 per month is that the payments were no more than $200 per month.

▮ While it is true that it was within the province of the jury to determine upon a higher life expectancy than that set forth in the mortality tables, this must be balanced against a diminution of earning capacity with advanced years, which, in the Court's opinion was clearly indicated, as well as the very liberal approach adopted in computing the amount of income at its maximum.

Upon all the facts, the Court is of the view that a verdict which gives to plaintiff the full value of the present worth of the pecuniary damages suffered is $40,000.

The motion to set aside the verdict on the ground of excessiveness is granted unless within ten days from the date hereof plaintiff files a proper remittitur consenting to reduce the verdict to $40,000, in which event the motion is denied.

3. No information is furnished as to 3%.

4. No information is furnished as to 3½%.