**POINDEXTER v. GROVES et al.**

**No. 179, Docket 22248.**

United States Court of Appeals
Second Circuit.

Argued March 5, 1952.

Decided May 1, 1952.

Hand, Circuit Judge, dissented.

Benjamin B. Sterling, New York City, (Herman N. Rabson and Betty H. Olchin, New York City, of counsel), for plaintiff-appellee.

Tompkins, Boal & Tompkins, New York City (Arthur M. Boal, New York City, of counsel), for defendant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a judgment on a verdict for the plaintiff in a suit under the Jones. Act, 46 U.S.C.A. § 688, brought by the administratrix of the estate of Carl Poindexter who was a messman employed on the defendants' S.S. Irvin S. Cobb. The decedent became ill and died on the ship, allegedly because of the negligent failure of the master to provide prompt and adequate medical and surgical care. The appellants seek reversal because of the denial of their motions to dismiss the complaint and set aside the verdict on the ground that negligence had not been proved and, if proved, had not been shown to have been the proximate cause of. the death. They also rely upon claimed error in the charge, in the admission of evidence relating to the issue of damages and in the conduct of the jury during its deliberations.

The decedent was taken sick on February 3, 1948, while the vessel was at Cardenas, Cuba on a voyage on which its next port of call was Havana. He suffered from severe abdominal pains and, on the following day, was unable to work. His abdomen became swollen and very hard and he vomited frequently. He asked for medical treatment and, on the afternoon of February 4th, the chief mate, in the absence of the captain, sent him to a hospital at Cardenas where his sickness was diagnosed as a gastric ulcer with the need for surgery indicated. The surgical facilities at the hospital were limited, however, and, the attending physician being informed that the vessel was to leave for Havana, a voyage of about seven hours, at five o'clock on the afternoon of February 5, discharged and returned the decedent to the ship at about 2:30 that afternoon with a prescription for medical treatment and directions to send him to the hospital in Havana if his condition did not improve. The prescribed medical treatment was given but the vessel's departure was delayed until 9:30 o'clock the following morning and it did not arrive at Havana until about 5:30 P. M. that day, February 6th.

Meanwhile, the decedent continued to be in great pain and his condition apparently kept getting worse. He asked to be returned to the hospital while the ship was still in Cardenas but the master refused and, shortly before the vessel arrived at Havana, he requested hospitalization there. The master did, soon after arrival at Havana, ask the ship's agent there to obtain a doctor but, when told that it could not be done at that time, did nothing further about it, the master then going ashore on personal business.

At about 11:30 P. M. the decedent suddenly screamed and was found by the chief mate and others who responded to be in a state of collapse, either unconscious or semiconscious. A doctor was then summoned who reached the ship a little after midnight. He recommended immediate removal to a hospital but, before that could be done, death occurred, at 1:15 A. M. on February 7th. An autopsy disclosed that it resulted from peritonitis caused by a perforated ulcer.

There was substantial evidence from which the jury could have found that the captain was negligent in not providing prompt medical care to the decedent both while the ship was at Cardenas and when it arrived at Havana. With respect to Cardenas, the captain knew that the medical treatment prescribed by that hospital was given upon the assumption that the ship would sail in time to reach Havana on the evening of February 5th. There was ample evidence to show that he knew that the messman was seriously ill and in great pain and that he seemed to be getting progressively worse while the ship remained in Cardenas. He could have returned the decedent to the hospital as he was asked to do or he could have called a doctor to the ship for further advice as to what should be done in view of the then known delay before the better hospital facilities in Havana would be available. He did neither and, in view of his lack of medical training and the fact that medical advice was readily at hand, the jury could well have found that he was negligent in doing without it.

After the ship left Cardenas, the decedent's condition continued to deteriorate but, in spite of that, the captain made no attempt to arrange for prompt medical or surgical treatment by radio communication with Havana. Even when, upon arrival, he made an effort to get a doctor, he was content merely to request the ship's agent to act and, when he learned that he would not try to get one, made no attempt to call one himself. When later in the night a doctor was actually called, one came promptly but the decedent was then on the verge of certain death. Such evidence of the captain's indifference to the decedent's plight at Havana was enough to take the question of his negligence there also to the jury.

A more difficult question, however, is whether, assuming that there was negligence as above described, this negligence could have been found to be the proximate cause of the decedent's death. Although the plaintiff's expert medical witness, in answer to a hypothetical question based upon the above facts, testified that he was reasonably certain that the failure to provide medical and surgical care between the time the decedent returned to his ship and shortly before he died was the cause of his death, this alone would not support a finding by the jury that the defendants' negligence was the proximate cause. This is so because the time included a period during which the captain, without being negligent, could have relied upon and followed the advice which had been given by the doctor at the hospital without doing more, *i. e.* from the time when the decedent was discharged from the hospital and the time when, if the vessel had sailed as scheduled, it would have reached Havana.[1]

1. After stating the hypothetical facts in conformity with proof presented by the plaintiff the witness was asked: "Now, Doctor, can you, in your opinion, state with reasonable certainty whether decedent's gastric ulcer condition which perforated and produced peritonitis, thereby causing shock and his death, was the result of the failure to provide the decedent with medical and surgical care and attendance between approximately 2:30 P. M., on February 5, 1948, and 12:50 A. M. on February 7, 1948?" He answered, "Yes."

The fact crucial to the determination of proximate cause in this case was the time when the ulcer perforated since the experts on both sides were in agreement that prompt surgical treatment after perforation was indispensable to save the patient's life. If surgery is performed within six hours after perforation, the patient has a ninety per cent chance to recover; if more than twenty-four hours elapse, there is less than a ten per cent chance of recovery. However, they were in sharp disagreement as to when perforation occurred having as a basis for their respective conclusions a description of the decedent's symptoms and the fact that the autopsy report showed that a large amount of pus was found in the abdominal cavity. The defendants' experts testified that at least twenty-four hours would be required to cause such an accumulation of pus and that, since a swollen and hard abdomen was a symptom of perforation, they were of the opinion that perforation occurred before, or while, the decedent was in the hospital at Cardenas. However, to contradict this conclusion was their further testimony that, after perforation, the pain subsides considerably while here the evidence was that the decedent's pain continued and became more severe after he left the hospital. On the other hand, the plaintiff's expert was of the opinion that a large amount of pus could accumulate within six to twelve hours and that perforation occurred after the decedent was discharged from the hospital. In view of this welter of conflicting opinion, a jury question was presented and we cannot say that, in resolving this conflict, the jury was not justified in concluding that had reasonable steps been taken either at Cardenas or Havana to give the decedent the benefit of prompt, continued and competent care and treatment by a doctor his life would have been saved. Further, the importance of this time element was specifically pointed out to the jury in the court's instruction concerning proximate cause:

"* * * If you find that the master was negligent in failing to provide medical care or hospitalization, that alone is not sufficient to justify a verdict for the plaintiff. You must find that such failure was the competent producing cause of Poindexter's death.

"If you should find, for example, that Poindexter's condition was such that upon his discharge from the hospital at Cardenas, either because he then had a perforated ulcer or that the ulcer perforated thereafter and, regardless of any medical treatment that might have been afforded him, it would not have saved his life, then the failure to provide such treatment cannot be said to be the proximate cause of his death, and your verdict must be for the defendants. Under this state of facts, if you so find, it must be clear that his life could not have been saved by the furnishing of prompt medical and surgical treatment."

With the issue thus presented to the jury, and in view of all the evidence, we think there was no error in denying the defendants' motions.

Nor was there any error either in the charge as given or in refusal to instruct in the language of some of the appellants' requests to charge. The jury was plainly and correctly told what the issues were and what the appellee had to show by the requisite proof before she could recover; to the extent that the appellants were right in their requests the substance of them was charged.

■ The question as to the conduct of the deliberations by the jury after the case was submitted arose after the verdict had been taken and the jurors discharged. The assertion of one of them that proper consideration had not been given the evidence and that some instructions had been disregarded was brought to the attention of the judge who then conducted an investigation in which this juror testified. The motion to set aside the verdict was then denied on the authority of McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300. Nothing was shown but how the jury considered the issues submitted to it for determination and that does not warrant a departure from the firmly established rule that jurors may not be permitted to impeach their verdict. McDonald v. Pless,

supra, Jorgensen v. York Ice Mach. Corp., 2 Cir., 160 F.2d 432, certiorari denied 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349; United States v. Kansas City, Mo., 8 Cir., 157 F.2d 459.

■ The final point relates to the question of damages. The appellee testified that the decedent had been turning over to her sums in excess of his regular wages. A young messman who had worked on the ship with the decedent and who also had served as a messman on similar ships was permitted to testify that such messmen customarily received tips in addition to their regular wages and that from his personal experience on this ship he knew that it was the custom there. The objection that he was so lacking in experience that he was not a competent witness was not well taken. He had had some two years at sea and his qualifications as a witness on this subject was a matter within the discretion of the trial judge. Meiselman v. Crown Heights Hospital, Inc., 285 N.Y. 389, 34 N.E.2d 367.

Judgment affirmed.

L. HAND, Circuit Judge (dissenting).

I am not satisfied that the evidence justified a finding of negligence on February fifth. The hospital had returned Poindexter with a report that his was a medical case which could be better dealt with in Havana. True, the hospital supposed that the ship would sail at 5:30 on that day; and Poindexter got worse during the night. However, I cannot find that the master knew that the hospital's advice was based upon the ship's sailing on the fifth, and indeed there is no evidence that it was, although perhaps the jury was free to assume that the hospital would have held him longer if it had learned of the delay. Be that as it may, what could a master be expected to know about stomach ulcers? He had expert advice, and I submit that he was entitled to rely upon it.

Whether he should have acted sooner at Havana when the ship got there at 6:30 P.M. on the sixth, is a different matter. Poindexter's sickness had then continued for nearly 36 hours after he came back from the hospital, he had become very ill

indeed, and I will assume that the jury would have been justified in finding that the master should have acted that night. However, there was no evidence to support a verdict that, assuming the master was then negligent, his failure caused Poindexter's death. It is clear from Burbank's own testimony that there was at the very best no more than an equal chance that the peritonitis was not then twelve hours old; and, if it was, there was little chance that surgery could have saved Poindexter. A preponderance of evidence at least means that the chances are better than even that the disputed allegation is true. I cannot find a shred of evidence in this record to prove that there was more than an even chance that anything could have been done in Havana. Therefore, I should have dismissed the complaint on the ground (1) that no negligence was shown in Cardenas; and (2) that, if negligence was shown in Havana, the plaintiff failed to prove that it caused Poindexter's death.