Lebert BIHM, Plaintiff,

v.

LYKES BROS. STEAMSHIP CO., Inc.,
Defendant.

Civ. Nos. 130–12, 137–258.

United States District Court
S. D. New York.

Feb. 8, 1963.

Cooper, Ostrin, Devarco & Ackerman, New York City, for plaintiff; Thomas J. Doyle, Robert Goodman, New York City, of counsel.

Boal, McQuade & Fitzpatrick, New York City, for defendant; Arthur M. Boal, Arthur M. Boal, Jr., New York City, of counsel.

FEINBERG, District Judge.

This is a motion to set aside as excessive a verdict of $30,200 in a seaman's action. Plaintiff Lebert Bihm brought suit against defendant Lykes Bros. Steamship Co., Inc. alleging two separate causes of action: the first for damages based on an injury to plaintiff's left knee sustained in an accident aboard the S.S. Margaret Lykes on September 12, 1957; the second for damages based on an accident which occurred on the S.S. William Lykes on April 15, 1958. Each cause of action was brought on the often-combined theories of negligence and unseaworthiness. The jury returned a verdict for plaintiff of $30,200 on the first cause of action and $3,900 on the second. Defendant moves to set aside the verdict on the first cause of action only, on the ground that it is excessive in amount. Defendant seeks a new trial unless plaintiff consents to a remittitur to $15,000.

Defendant contends that the verdict is excessive first because plaintiff was guilty of contributory negligence, and second because, regardless of contributory negligence, $30,200 is grossly excessive for the injuries which plaintiff received. In deciding this motion, I must view the evidence in the light most favorable to plaintiff. Poindexter v. Groves, 103 F.Supp. 657 (S.D.N.Y.1951), aff'd, 197 F.2d 915 (2 Cir., 1952); Fiskratti v. Pennsylvania R. R., 147 F.Supp. 765 (S.D.N.Y.1957).

■ 1. Defendant's argument regarding contributory negligence is apparently the following: plaintiff was contributorily negligent as a matter of law; nevertheless, the jury found that plaintiff was not negligent; therefore, the jury verdict should be reduced by the percentage of assumed contributory negligence. If plaintiff were contributorily negligent, defendant's contention that the jury should have reduced plaintiff's damages by the percentage of his negligence contributing to the accident is correct.[1] However, the basic premise that plaintiff was negligent as a matter of law is incorrect. There is evidence in the record that plaintiff slipped in a puddle of oil about one foot in circumference and 1/16 of an inch deep, caused by a deck plate that was caved in "a little bit."[2] Plaintiff testified that he did not see the puddle of oil,[3] and the jury was free to believe him. The record shows that a large area of the deck had been recently "slushed" down by longshoremen with fish oil and lampblack to preserve the deck, and that this portion of the deck, including the puddle, was shiny black in color.[4] Since the whole area was the same color, I do not feel that a small and shallow puddle of oil would be so apparent to a person walking toward or near it, even for a second time, that I can say, as a matter of law, that plaintiff was negligent in not seeing it. The question was for the jury. Moreover, I do not understand defendant to be arguing that plaintiff was negligent as a matter of law merely because he was walking on an oily deck on his way to an assigned job.[5] If defendant is advancing this argument, it is rejected. Therefore, the alleged contributory negligence of plaintiff is not a basis for reducing the jury verdict.

■ 2. Defendant's contention that, in any event, $30,200 is an excessive amount for the injuries sustained by plaintiff is also unfounded. The standard to be applied is whether the jury award is "so excessive as to compel the conclusion that it is the result of passion or prejudice or is shocking to the 'judicial conscience.'" Dagnello v. Long Island R. R., 193 F.Supp. 552, 553 (S.D.N.Y. 1960), aff'd, 289 F.2d 797 (2 Cir., 1961); Dellaripa v. New York, N. H. & H. R. R., 257 F.2d 733 (2 Cir., 1958). The evidence as to plaintiff's possible loss of future earnings, pain and suffering (past, present and future) and special damages must be viewed most favorably to plaintiff, although it must be remembered that plaintiff injured his left leg in three separate accidents, and only one of these is the basis of the litigation involved here. In 1952, plaintiff fractured his left tibia and fibula; in 1957, the accident here involved, he sustained a comminuted fracture of the left patella; and in 1961, he suffered a fracture of the lateral tibial plateau of the left knee.

■ Regarding loss of future earnings, Dr. Siffert, plaintiff's medical expert, was asked whether there was any disability of plaintiff's knee and whether plaintiff could presently work as a seaman. He answered that there is disability in the knee and that he did not know whether plaintiff could work.[6] He went on to say that:

"It is not a stable knee, and it is a knee that would cause pain with any extensive standing or extensive walking or kneeling."[7]

He stated that this was due partly to the knee's instability and partly to the fractured kneecap.[8] This evidence supports the inference that Dr. Siffert believed that plaintiff, even at the time of trial, might be unable to work as a seaman, or at any other trade involving strenuous

1. 46 U.S.C. § 688, incorporating by reference 45 U.S.C. § 53; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). The jury was so instructed. Transcript of charge, p. 23.

2. Tr. pp. 24, 28.

3. Tr. pp. 66, 67.

4. Tr. pp. 23, 24, 63, 69.

5. Tr. pp. 18, 19.

6. Tr. pp. 170, 171.

7. Tr. p. 171.

8. Tr. p. 171.

physical labor. This, coupled with plaintiff's inexperience in any other type of work,[9] could justify a jury finding that a substantial reduction in Bihm's average earnings as a seaman ($500 a month when working) [10] was imminent. Since Bihm was not quite 43 years old at the time of trial, the total future loss of earnings could be quite large, and much of this might be attributable to the 1957 accident. Dr. Siffert testified that not all of plaintiff's disability is due to the 1957 accident.[11] Dr. Balensweig testified that about one-half of plaintiff's disability is due to the 1957 accident.[12] The extent to which the 1957 accident did contribute to the disability is a question for the jury, and they could conclude that it contributed 50% or more.

Although not required to do so under the applicable standard of review, I can overlook Dr. Siffert's testimony and still find that, based on the testimony of defendant's medical expert, Dr. Balensweig, there is evidence to support a substantial loss of future earnings. Dr. Balensweig admitted the possibility of eventual disability. He testified as follows:

"In a follow-up of fractures of the patella [the 1957 accident], the period of time for a good-functioning knee before disabling changes has been a minimum of 15 or 20 years without any clinical decrease in function. With a fracture of the lateral tibial plateau [the 1961 accident] the period of time on the average is a little bit shorter. To say that he will definitely be disabled from this knee in any period of time is impossible, but the average time for an increase of symptoms, with a combination of the two fractures, would be about fifteen years. He could go for the rest of his life without being disabled by the leg. So he could have a somewhat shorter period before he has an increase of symptoms." [13]

At the time of the 1961 accident, from which time the 15 years referred to by Dr. Balensweig would be computed, plaintiff was almost 41.[14] Defendant's expert thus contemplated the possibility of "an increase of symptoms" during plaintiff's working life from which the jury could infer a sufficient change in plaintiff's leg to result in disablement. This would mean that, with some working years remaining, plaintiff would have to abandon the only occupation in which he had substantial experience, and his earnings at this advanced stage of his life would be greatly or wholly diminished. There is ample evidence that prolonged strenuous motion causes pain to Bihm even now,[15] so that there could presumably be a decrease in earnings from the present to the time of total disablement. In this regard, it must be noted that approximately $150 of Bihm's average monthly salary of $500 is comprised of overtime pay,[16] which amount would be diminished if his injuries preclude him from doing most or all extra work.

The second item to be considered is plaintiff's pain and suffering. There is evidence that plaintiff suffered pain from the time of the 1957 accident to the time of trial.[17] Some of this pain is due to the other two accidents.[18] Both doctors testified that the pain which plaintiff now has will continue, and Dr. Siffert implied that it will increase as the years go by.[19] At the present time, plaintiff has a 10 to 15 degree limitation of motion in his left

9. Tr. p. 2.

10. Tr. pp. 56, 74.

11. Tr. pp. 152, 171.

12. Tr. p. 184.

13. Tr. p. 185.

14. Plaintiff's Exhibit 6 indicates that Bihm was born on February 2, 1920.

15. Tr. pp. 118, 119.

16. Tr. pp. 73, 74.

17. Tr. pp. 49, 118.

18. Tr. pp. 125, 126.

19. Tr. pp. 158, 159 (Siffert); 194 (Balensweig).

knee.[20] Dr. Siffert testified that this limitation will increase.[21] After the 1957 accident, it was necessary to operate on plaintiff, and wire his kneecap together. This wiring is still in plaintiff's knee.[22] After the accident, plaintiff was in and out of three hospitals for a four-month period, of which time a total of about 11 weeks was spent as an in-patient.[23] Again, the extent to which plaintiff's past, present and future pain and disability are attributable to the 1957 accident, rather than to some other cause, is a jury question, and the jury could reasonably find much of it due to the 1957 accident. This pain and disability might alone support a substantial jury verdict. See 26–27 NACCA L.J. 303, 311–12 (1960–61) and cases collected therein.

█ Finally, with regard to special damages, plaintiff lost about $1,500. Defendant concedes that plaintiff's wage loss was this amount, based upon a wage of $500 a month, including overtime.[24] There was also submitted to the jury the issue of whether plaintiff suffered an additional wage loss of about $1,250 from the accident. The Court's charge assumed that there was a conflict as to whether plaintiff was actually fit for duty for a two and one-half month period commencing about the middle of January 1958.[25] A review of the record, however, indicates that there was no evidence that plaintiff's physical condition kept him from getting work after January 13, 1958.[26] To this extent, therefore, the jury verdict may have included an improper item of about $1,250 and should be corrected.

Defendant recognizes that " * * * no two cases are, of course, exactly alike," [27] so that precise guidance from other situations is difficult to find. However, examples of liberal awards in what appear to be roughly analogous cases are not difficult to locate, e. g., Chesapeake & O. Ry. v. Newman, 243 F.2d 804, 815 (6 Cir., 1957) ($60,000); Oddenes v. Universe Tankships, Inc., 188 F.Supp. 117 (S.D.N.Y.1960) ($33,100).

█ It may be that the verdict in this case was on the high side, but considering all of the elements of plaintiff's possible damage, I do not feel that the verdict was the result of passion or prejudice, nor does it shock the judicial conscience.[28] Therefore, defendant's motion will be granted only to the limited extent necessary to take into account the $1,250 item of special damages discussed above. See Rausnitz v. Philadelphia Transp. Co., 160 F.Supp. 188 (E.D.Pa.1958); cf. Poindexter v. Groves, 103 F.Supp. 657 (S.D. N.Y.1951), aff'd, 197 F.2d 915 (2 Cir., 1952). Motion for a new trial granted unless within ten days plaintiff files a remittitur consenting to reduce the verdict to $28,950, in which case the motion will be denied. Settle order on notice.

20. Tr. pp. 151, 152 (Siffert); 181 (Balensweig).

21. Tr. p. 159.

22. Tr. pp. 158, 159.

23. Tr. pp. 30–43.

24. Defendant's Memorandum, p. 35 (filed January 21, 1963).

25. Transcript of charge, pp. 17, 18.

26. Plaintiff was marked fit for duty on January 13, 1958. Although there was evidence that plaintiff was advised to take further physiotherapy at home, it is clear from the record that plaintiff's delay in shipping out was not due to his physical condition but was a normal delay necessary to obtain a ship bound for where plaintiff wanted to go. Tr. pp. 57, 58.

27. Defendant's Memorandum, p. 35 (filed January 21, 1963).

28. It should be noted that defendant does not contend that the same jury was excessively liberal in the companion action in awarding plaintiff $3,900.