Assoumany Georges, Appellant-Respondent, v American Export Lines, Inc., Defendant and Third-Party Plaintiff-Respondent-Appellant. Manuel Galvao, Third-Party Defendant.

First Department, October 9, 1980

### APPEARANCES OF COUNSEL

*Theodore H. Friedman* of counsel *(Fred R. Profetta, Jr.,* with him on the brief; *Schneider, Kleinick, Friedman, Miller & Weitz,* attorneys), for appellant-respondent.

*Stephen K. Carr* of counsel *(John A. Anduiza* and *William J. Troy, III,* with him on the brief; *Haight, Gardner, Poor & Havens,* attorneys), for defendant and third-party plaintiff-respondent-appellant.

### OPINION OF THE COURT

MURPHY, P. J.

Plaintiff Georges brought this action to recover damages for injuries sustained as a result of an allegedly unprovoked assault by his roommate, third-party defendant Galvao. Both Georges and Galvao were seamen on the *S. S. Export Commerce,* which was owned by defendant American Export Lines, Inc. They had been on the same "watch" and had roomed together from May, 1969 to January, 1973, when the alleged assault occurred.

Georges, a black man, testified that Galvao, from the very first day they had become roommates, had openly expressed his displeasure with the color of Georges' skin. He further asserted that Galvao had threatened him on two occasions. In 1970 in Cadiz, Spain, and in 1971 in Leghorn, Italy, Georges stated that Galvao had invited him to fight. Georges had declined both of these invitations because he was older and smaller than Galvao. Plaintiff's testimony suggests that he told the third engineer, Chick, of the threats; it also tends to show that he asked the first assistant engineer, Mittell, for a change of "watch" and room.

Plaintiff further testified that he had filed a complaint with the Coast Guard in 1971 because Galvao slept with a knife under his pillow. Plaintiff admitted that he had never been threatened with the knife. According to plaintiff's testimony, the Coast Guard investigated the complaint, and the knife was never seen thereafter. The Coast Guard files did not reflect any history of this purported complaint by plaintiff.

Georges stated that, on January 15, 1973, he was punched and knocked to the floor in an unjustified and unprovoked attack by Galvao. Plaintiff did not attempt to fight back; he merely fled for his own safety. Plaintiff's medical evidence tended to establish that the assault was the competent producing cause of a permanently disabled herniatic disc.

Plaintiff's case was supported by the testimony of fellow seamen Avila, Capron and Garcia. These individuals confirmed that Georges was very friendly with all the personnel on the vessel while Galvao did not "get along" with any of the personnel. These seamen confirmed Galvao's use of racial epithets and his basic discrimination against black men.

The plaintiff also buttressed his case with the testimony of the bosun named Sununu. The latter maintained that the master, Duplissa, had authorized him to investigate the occurrence and to make a formal oral report. The trial court ruled that Sununu's oral report was an admission that could be introduced into evidence against American. Sununu interviewed the plaintiff, the master, the first engineer, and various members of the crew, some named and other unnamed. The bosun's testimony revealed that the master, Duplissa, and the first engineer, Mittell, had been aware for a period of time of the tensions between Georges and Galvao. The bosun's testimony also reflected the fact the crew was generally aware of the "bad blood" between those roommates.

Duplissa and Mittell averred that they were unaware of any friction between Georges and Galvao. Chick stated that he knew about a minor incident in which the plaintiff threw Galvao's socks away. Both Mittell and Chick believed that Galvao was friendly and one of the best "oilers" whom they had known. American's evidence indicated that Galvao had never been logged, fired or reprimanded during his entire career. In his own testimony, Galvao denied that he had even assaulted the plaintiff on the date under discussion.

Plaintiff's complaint contained causes of action against American based upon (i) the unseaworthiness of the vessel arising from Galvao's vicious nature, (ii) maintenance and cure, and (iii) negligence under the Jones Act in hiring and retaining Galvao in its employ. At the close of plaintiff's case, the trial court dismissed the cause founded upon unseaworthiness because it found that Galvao was not a person of savage or vicious nature, unequal in disposition and seamanship to the ordinary men of the calling. The parties stipulated that the cause founded upon maintenance and cure need not be submitted to the jury. The negligence cause was submitted to the jury and a verdict of $400,000 was returned in favor of Georges against American. Subsequently, the trial court submitted American's third-party claim against Galvao to the jury on the issue of apportionment. The jury found that American was 51% responsible and Galvao was 49% liable. In a resettled order, entered January 4, 1979, the trial court granted American's motion for a new trial based upon excessiveness of the verdict to the extent of directing a new trial upon damages only unless plaintiff stipulated to a reduction of the verdict in his favor to the sum of $150,000. Both Georges and American now appeal from that resettled order.

The first issue presented is whether the trial court correctly dismissed the cause based upon unseaworthiness of the vessel. In resolving this issue and the second issue relating to the evidentiary sufficiency of the negligence cause, the testimony of bosun Sununu will not be considered for the reason later to be explained under the fourth issue. In discussing the first and second issues, the evidence will otherwise be viewed most favorably to the plaintiff *(Bihm v Lykes Bros. S. S. Co.,* 213 F Supp 899, 900, affd 323 F2d 1005).

■ The warranty of seaworthiness is a species of liability without fault *Lykes Bros. S. S. Co. v Boudoin,* 211 F2d 618, revd 348 US 336, 338, and on other grounds 350 US 811). The

warranty is not that a seaman is competent to meet all contingencies. The warranty does require that he is equal in disposition and seamanship to the ordinary men in the calling *(Keen v Overseas Tankship Corp.,* 194 F2d 515, 518, cert den 343 US 966). If the seaman has a savage and vicious nature, then the ship becomes a perilous place and the warranty is breached *(Boudoin v Lykes Bros. S. S. Co.,* 348 US, at p 340). A plaintiff may show that an assailant's presence created an unseaworthy condition on a vessel through (i) independent evidence with regard to the assailant's temperament and disposition, or (ii) direct evidence showing a vicious and unprovoked attack. In establishing the deficiencies in the assailant's temperament, a plaintiff may show that the assailant was exceptionally quarrelsome, habitually drunk, or had other characteristics making him unfit to serve as a seaman. (1B Benedict, Admiralty [6th ed], § 31, at pp 3-256, 3-257.)

█ Although Galvao's record before the time of the assault was unblemished, the fact remains that the plaintiff had reported to the officers two threats made by Galvao in Cadiz and Leghorn. These threats, in themselves, constituted some proof that Galvao had a belligerent nature. Moreover, plaintiff's other witnesses confirmed that Galvao had a reputation for being less than friendly, if not for being irascible. Of course, American is not absolved from liability, as a matter of law, simply because Galvao's record theretofore was unblemished (see *Lykes Bros. S. S. Co. v Boudoin,* 211 F2d 618, 620, n. 3, *supra).*

The present factual situation is highly analogous to that in *Stechcon v United States* (439 F2d 792). In *Stechcon,* the Court of Appeals for the Ninth Circuit reversed an award for summary judgment in favor of the defendant shipowner. While that court found that there was no merit to the negligence claim, it found that a question of fact was presented as to whether the assailant had an evil disposition. The court emphasized, as well may be done in this case, that plaintiff's proof did not indicate a "sailors' brawl" had occurred. Instead, the proof suggested the plaintiff had been unjustifiably attacked with the assailant's fists. The savage attack described by Georges creates a factual issue, in itself, as to whether Galvao had a vicious temperament. At the new trial that is herewith ordered for the errors in the acceptance and exclusion of evidence, the cause based upon unseaworthiness will be reinstated.

The second issue is whether plaintiff established a prima facie case of negligence on the part of American in hiring and retaining Galvao. A plaintiff may recover on the theory of negligence where a vessel's officers have failed in their duty to protect the safety of the crew. The plaintiff must establish that the assailant constituted a foreseeable risk to the plaintiff against which the shipowner had a duty to guard. (1B Benedict, Admiralty [6th ed], § 31, at pp 3-247, 3-248; Ann. 22 ALR3d 624, Liability Under Jones Act or Seaworthiness Doctrine for Injuries Caused by Assault, § 3, at p 634; see *Guzzi v Seas Shipping Co.,* 270 F2d 714.)

■ In its brief, American contends that there was no "foreseeable risk" since the trial court found, in dismissing the unseaworthiness claim, that Galvao did not have a vicious temperament. American's argument in this regard becomes academic in view of our reinstatement of the unseaworthiness claim. Suffice it to say that there was sufficient evidence in the record for the jury to conclude that American had both actual and constructive notice that Galvao posed a dangerous threat to Georges.

The facts in this proceeding are analogous to those in *Brailas v Shepard S. S. Co.* (152 F2d 849, cert den 327 US 807). In *Brailas,* the first assistant engineer stabbed the chief engineer. Two weeks before the occurrence, a cook had reported to the chief mate a threat made by the assailant against the chief engineer. The Court of Appeals for the Second Circuit agreed that the trial court had properly submitted the negligence cause to the jury. Likewise, the threats reported by plaintiff herein to the officers mandated that the negligence cause be submitted to the jury.

The third issue is whether the trial court erred in not permitting Galvao to call two character witnesses. American's counsel joined in the exception taken by Galvao's counsel. Therefore, this matter is preserved for appellate review.

■ Whenever the character or reputation of a party is material to the establishment of a claim or defense, or is an element in the measure of damages, it is said to be in issue and may be proved. (Fisch, New York Evidence [2d ed], § 172, p 96.) The trial court accorded the plaintiff wide latitude in calling witnesses to attest to Galvao's unfriendly nature and his own congenial reputation. Galvao should have been given an equal opportunity to call character witnesses on his behalf.

In *Louisville Ins. Co. v Monarch* (99 Ky 578), the answer

charged that the captain and the crew of the steamship were incompetent, unskillful and unfit for the service in which they were engaged. The Court of Appeals of Kentucky found that the trial court had properly received evidence as to the competency and fitness of the captain and the crew for the service in which they were engaged, and their general reputations as to such competency and fitness. The exclusion of evidence by the trial court in the instant proceeding seriously prejudiced American's case, and warrants reversal.

The fourth issue is whether Sununu's testimony was correctly received as an admission attributable to American. The trial court ruled that Sununu had been authorized by the master to conduct a formal investigation of this incident and to make a formal oral report to the master. The trial court ruled that Sununu could testify as to this report since it constituted an admission by American. In his examination, the master denied that he had authorized any investigation by Sununu.

■ Where an agent's responsibilities include making statements on his principal's behalf, the agent's statements within the scope of his authority are receivable against the principal (*Spett v President Monroe Bldg. Corp.*, 19 NY2d 203, 206). Pursuant to this principle, an agent's written report, made within the scope of his duties, has been received in evidence against his principal even though the report was not based upon the agent's personal knowledge (*Cianci v Board of Educ.*, 18 AD2d 930). An admission by a party or the party's agent is receivable even though it was derived wholly from hearsay. (Richardson, Evidence [10th ed], § 214, p 189.)

■ Even though Sununu testified that his report to the master was oral, that report is receivable as an admission in the same fashion that a written report would be receivable. However, the conflicting testimony in the record presents a sharp question of fact as to whether Sununu was authorized to make the report. Consequently, the trial court should not have ruled, as a matter of law, that the report was receivable. During plaintiff's case, American's counsel objected to the reception of that testimony because of Sununu's lack of authorization. Although Sununu could testify as to the alleged grant of authority to investigate from the master (Mechem, Agency [4th ed], § 95, p 63), this matter was placed in dispute by the master's denial of that authorization.

Sununu's testimony should have been received with an

immediate limiting instruction to the jury that Sununu's claim of authorization was a factual question that they would ultimately decide. .Of course, the trial court should have ultimately presented this factual question to the jury in his charge. This error also requires reversal and a new trial.

The fifth issue is whether contributory negligence was properly charged. A seaman may be contributorily negligent if he fails to take available action in a dangerous situation (cf. *Webb v Dresser Inds.*, 536 F2d 603, 608, cert den 429 US 1121). It is the defendant's burden in this area to prove the plaintiff's contributory negligence *(Utri v Transport Commercial Corp.*, 479 F2d 766, 769). If plaintiff is proven contributorily negligent, the jury is required to reduce plaintiff's damages by the percentage of his negligence. *(Bihm v Lykes Bros. S. S. Co.*, 213 F Supp 899, 901, *supra.)* In other words, the jury should be charged under a comparative negligence standard.

The trial court instructed the jury on this point in the following manner:

"If upon all the evidence you find that the plaintiff did not take reasonable measure to avoid harm to himself, then he failed in his duty under the law and cannot recover.

"The burden is on the plaintiff to establish that it took reasonable measures for his own safety".

The trial court incorrectly instructed that contributory negligence would bar any recovery by the plaintiff. The charge should have contained a comparative negligence formula. So too, the charge improperly placed the burden of proof for contributory negligence on the plaintiff; the burden rested on defendant American. Nonetheless, these errors were actually in favor of American, and thus they do not warrant a reversal.

We reject plaintiff's contention that contributory negligence should not have been charged at all. Plaintiff argues that notice is an element of his case-in-chief. It is further argued that plaintiff's case must necessarily fail if he did not notify the officers of Galvao's threats. This reasoning is flawed since American may have received notice of the dangerous situation from a source other than plaintiff. The jury should be allowed to decide whether plaintiff was contributorily negligent in failing to apprise the officers promptly and fully of the dangerous conditions that existed on the vessel. This failure to notify on plaintiff's part could conceivably justify a reduction in his damages. In this same vein, the jury should have also been

allowed to determine whether the plaintiff failed to minimize the risks inherent in the situation by failing to notify the Coast Guard and to file a union grievance. While the plaintiff was under no obligation to pursue either of those measures, a jury could find that he acted negligently in remaining silent under the exigent circumstances presented. However, accepting plaintiff's version of the occurrence, it would be totally unreasonable to expect him to change vessels in the 1969-1973 period since he was not the wrongdoer. Therefore, the jury should not be permitted to consider that fact in assessing the question of contributory negligence.

█ The sixth issue is whether the third-party action by American for indemnity against Galvao was properly submitted to the jury on the theory of apportionment. Where a shipowner is held liable for unseaworthiness or negligence because of an assault made by one member of the crew upon another, it is entitled to full indemnity against the assailant (Horton v Moore-McCormack Lines, 326 F2d 104, 107). Consequently, even if the trial of the action-in-chief were free from error, a retrial of the third-party action would be required. We find that the trial court did not abuse its discretion in separately submitting the third-party action to the jury to avoid confusion.

In view of the fact that a new trial is being ordered, it is unnecessary to explore the damages issue.

For the foregoing reasons, the resettled order of the Supreme Court, New York County (HELMAN, J.), entered January 4, 1979, directing a new trial on the issue of damages only unless plaintiff stipulated to a reduction in the verdict to $150,000, should be reversed, on the law, and a new trial should be ordered, with costs to abide the event.

Ross, MARKEWICH, SILVERMAN and LYNCH, JJ., concur.

Resettled order, Supreme Court, New York County, entered on January 4, 1979, unanimously reversed, on the law, and a new trial ordered, with costs and disbursements to abide the event.