[815 NYS2d 526]

Nancy Giandana, Individually and as Administratrix of the Estate of Anna E. Demuth, Deceased, Respondent, v Providence Rest Nursing Home et al., Defendants. Providence Rest Nursing Home, Third-Party Plaintiff, v Ramar Services, Inc. Third-Party Defendant, and Becky Akosah, Third-Party Defendant-Appellant.

First Department, May 30, 2006

### APPEARANCES OF COUNSEL

*Fiedelman & McGaw,* Jericho *(James K. O'Sullivan* of counsel), and *Law Offices of Alan I. Lamer,* Elmsford, for appellant.

*Marshall E. Bloomfield,* Bronx *(Michael P. Bloomfield* of counsel), for respondent.

### OPINION OF THE COURT

MAZZARELLI, J.

Anna E. Demuth, 91 years old at the time and now deceased, was a patient at the Providence Rest Nursing Home. At some time between 11:00 P.M. on Monday, October 25 and 7:00 A.M. on Tuesday, October 26, 1999, she sustained a fractured femur and multiple bruises to her extremities. These injuries allegedly occurred either while she was being transferred from her bed to a wheelchair, or from the wheelchair to the shower.

An "Accountability Book" was maintained by Providence Rest. This book contained patient charts with details of the specific treatment protocol for each of the residents. Ms. Demuth's chart indicates that she was considered a "high risk" patient, who required the highest level of assistance. She had "impaired mobility, balance, unstable gait, CVA,[1] and Parkinson's disease." A box was checked on her chart in the Accountability Book indicating that "two people and/or a lifter"[2] were required any time she was moved or transferred from one place to another.

Monica English was a licensed practical nurse employed by defendant Providence Rest. She was working the 11:00 P.M to 7:00 A.M. shift on the day Ms. Demuth was injured. Becky Akosah, a certified nurse's assistant employed by defendant Health

---

1. This abbreviation stands for cerebral vascular accident or stroke.

2. The other three levels of patient transfer are: (1) independent; (2) intermittent supervision; and (3) one person assistance.

Care Professionals, Inc., was also on duty that morning and she had been assigned to assist Ms. Demuth. Veronica Douglas, LPN, Nancy Fitzgerald, RN, and Eleanor Flanagan, RN were three nurses employed by Providence Rest who participated in the nursing home investigation of Ms. Demuth's injury. Ms. Fitzgerald also prepared a report of the incident for defendant Providence Rest.

Plaintiff commenced this action against Providence Rest and Health Care Professionals, Inc. The nursing home then brought a third-party action against Ms. Akosah and Ramar Services. Defendant Health Care Professionals was the agency through which Ms. Akosah and other nurses aides were provided to Providence Rest. Ramar Services is the payroll company for Health Care Professionals.

Plaintiff moved for summary judgment in the main action, arguing that the nursing home was negligent for violating its own protocol as set forth in its Accountability Book. Specifically, plaintiff asserted that Providence Rest was negligent by allowing Akosah to move Ms. Demuth without the necessary assistance, and that this negligence was the proximate cause of her injuries.

Plaintiff presented a New York State Department of Health (DOH) report, signed by Eleanor Flanagan. That report stated:

"On Tuesday, October 26, 1999, LPN Veronica Douglas came on duty at 7:00 am and heard [Ms. Demuth] calling for the nurse. Ms. Douglas responded immediately. The resident was in her wheelchair and stated that she had fallen. The CNA [Akosah] was transferring her from bed to chair and had fallen on top of her. The resident was now experiencing severe pain. Ms. Douglas notified the Day Clinical Coordinator and an investigation was begun . . . . My findings of the event in the fall of resident Anna Demuth, who sustained a fracture of the femur and multiple bruises to the upper and lower right extremities, are that Becky Akosah, who was assigned to the resident and showered her, dropped her. The care of Anna Demuth by CNA Becky Akosah resulted in negligence to the resident."

Plaintiff also quoted a statement by Ms. Fitzgerald, who made a "nurse's bedside report" on the date of the incident, and who prepared a report for Providence Rest in connection with its investigation of the incident. In both documents, Fitzgerald recounts:

"I was called to 2GM by Ms. V. Douglas. She came into the Nursing Office and stated, 'Ms. Fitzgerald, you have to come to 2GM to hear what Ms. Demuth is saying. She said she thinks her leg is broken.' I went to 2GM immediately and Ms. Demuth was sitting in [a] wheel chair in [the] hallway, just beyond the desk. She told me when I asked her what was wrong that she thought her leg was broken and I asked what happened, she stated I have so much pain in my right leg. The girl fell on me, she pointed to the area of her leg which she stated was so painful. The other nurses, Ms. Douglas, Ms. English, assisted me to get the resident out of the wheel chair back in her bed with very easy careful movements."

In support of the motion, plaintiff provided the original and amended complaints and answers. She also submitted evidence which had been collected as part of Providence Rest's investigation of the incident.

On one of its forms, Providence Rest had asked Ms. Akosah to respond to Ms. Demuth's allegation that "She fell on [Demuth] when trying to take her out of bed." Ms. Akosah described the incident as follows:

"I had to give her shower [*sic*] so I went for the chair and put it right to the end of the bed on the left side. I asked her whether she could stand and she replied yes so I swung her on the bed into a sitting position and went to get her head and shoulders. I asked her to hold on to my waist and put [illegible] in between hers. But then she told me she couldn't make it to the chair so I swung back on the bed to get help to put her on the chair. Then, the nurse came in and I asked her to help me put her in the chair of which we did. But I realize there was blood on the sheet the nurse ask me where that was from. I checked the chair and realize the blood was from the elbow. I took her to the shower room and gave her a shower. Then I asked her to hold to onto [*sic*] the rail to get the shower chair of [*sic*] and put her wheelchair. She complained of pain in the hip I asked her to relax so that we tried again. The second time she stood and I put her in the wheelchair. She complained of pain in her hip when I was trying to put on the chair I and [illegible] to get the doctor."

A DOH report sent to Providence Rest and Ms. Akosah was also

annexed to plaintiff's motion. In that report, an attorney at DOH concluded that Ms. Akosah had violated Public Health Law § 2803-d.[3] Plaintiff also submitted the deposition testimony of Ms. English. English testified that when Ms. Akosah came on duty at 6:00 A.M., she gave Akosah those charts from the Accountability Book pertaining to the patients to which Akosah had been assigned. One of those charts contained instructions for Ms. Demuth's care. Ms. English also stated that she told Akosah that if she had any questions, she should ask for help. English related that:

> "At approximately 7:15 on that morning, incoming nurse reported to me that Ms. Demuth had called her and told her that someone had dropped her and fell on top of her and asked me if I knew anything about it. My reply was 'No, that was not reported to me' . . . . [W]e assist[ed] [Demuth] back to bed. She was complaining of pain in her right hip."

Also included by plaintiff in support of the motion was a copy of Ms. Demuth's chart from the Accountability Book.

In opposition to summary judgment, Providence Rest submitted a staffing agreement between the nursing home and Health Care Professionals (HCP) and the deposition testimony of Vicki Ragin, an employee of HCP. These were to support its argument that Ms. Akosah was not an employee of the nursing home, and thus not someone for whose actions it could be held vicariously liable. These submissions established that HCP was an employment agency which placed individuals at nursing homes such as Providence Rest, and that it had sent Ms. Akosah to Providence Rest. Providence Rest also argued that Ms. Akosah had disregarded the nursing home's rules. It relied upon its Accountability Book, the DOH report, and Ms. English's deposition testimony to support this claim. The nursing home also referenced the Flanagan report and it submitted a copy of the third-party complaint and answer.

Providence Rest argued that there was insufficient evidence that it violated any internal rules. Alternatively, it claimed that if any alleged violation had occurred, breach of an internal guideline constituted only some evidence of negligence, not negligence per se. The nursing home asserted that because Akosah was an independent contractor, it was not liable for her actions.

---

3. This statutory section is entitled "Reporting abuses of persons receiving care or services in residential health care facilities." It requires designated individuals to report incidents of abuse to DOH.

Ms. Akosah also interposed an answer to plaintiff's motion for summary judgment against Providence Rest. She submitted her attorney's affirmation, in which her counsel stated that she is familiar with the facts and circumstances surrounding the action "by virtue of personal knowledge." However, counsel never explained how she gained this "personal knowledge." Her counsel also disavowed both the authenticity and the truth of Ms. Akosah's statement submitted by plaintiff. Counsel stated that there are issues of fact as to the happening of the accident, without further specification. Ms. Akosah herself did not submit any affidavit detailing her recollection of the incident or posing any explanation for Ms. Demuth's injuries. Akosah's counsel also argued that most of plaintiff's submissions were inadmissible hearsay. She asserted that if Akosah's statement made in the nursing home's investigation of the incident were considered a "party admission" against the nursing home, there was nothing in the statement that implicated Ms. Akosah personally. The IAS court granted plaintiff's motion for summary judgment on liability against the nursing home. We affirm.

The only response to this appeal has come from Ms. Akosah. While Providence Rest filed a notice of appeal, it did not perfect the appeal and did not submit a brief. Becky Akosah, here a third-party defendant, is an aggrieved party, and under CPLR 1008, she has a right to appeal. Ms. Akosah also has the right to preserve any claims which could affect her liability in the third-party action.

As the proponent of the motion for summary judgment, plaintiff has the burden of presenting evidence in admissible form which establishes the defendant's negligence as a matter of law (CPLR 3212 [b]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Upon meeting this burden, an opposing party may still defeat the motion with proof "sufficient to require a trial of any issue of fact" (CPLR 3212 [b]). All the court is to do at this stage is to discern whether any material issues of fact exist (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]).

Applying these principles, the IAS court correctly determined that the admissible evidence before it conclusively established that Providence Rest was negligent because it allowed a high-risk patient to be transferred without the proper assistance and in contravention of its own requirements. The only inference that can be drawn from the admissible submissions on the motion is that Akosah attempted to move Ms. Demuth on her own

and that the nursing home was negligent for allowing this to happen (*Reardon v Presbyterian Hosp. in City of N.Y.*, 292 AD2d 235 [2002]). Moreover, neither Providence Rest nor Akosah raised any triable issue of material fact as to whether or not Ms. Demuth was cared for properly. No party has offered any version of the facts which would support an inference that Providence Rest was not negligent (*compare La Plante v State of New York*, 31 AD2d 570, 571 [1968], *affd* 28 NY2d 575 [1971] [the inference that the state hospital had been negligent for failing to provide bedside guardrails was not the only inference which could be drawn from the record; "it appear[ed] equally as probable that decedent slipped or fell on his own without any fault on the part of the State"]).

The argument Ms. Akosah raises, adopted by the dissent, that the order appealed should be reversed because plaintiff's submissions were largely inadmissible hearsay is misplaced and based on an inaccurate reading of the record. Some of the nurses' statements were not proof in admissible form. Other nurses' accounts also contained inadmissible collateral references to what third parties said and what Ms. Demuth told them. However, the IAS court did not rely on inadmissible hearsay in granting plaintiff's motion. There was ample admissible evidence supporting its finding that the nursing home was negligent as a matter of law.

For example, plaintiff submitted a report prepared by Ms. Flanagan, the Director of Nursing at Providence Rest, and filed with the DOH. Ms. Flanagan made statements in the report which inculpated the nursing home, her employer, for allowing the transfer of Ms. Demuth in an unsafe manner. Accordingly, her statements in the report were admissible under the "speaking agent" exception to the hearsay rule. This is a long- and well-recognized exception for statements made by agents of an employer, which are inculpatory to the employer. The exception requires that: (1) the making of the statement is an activity within the scope of the agent's authority; and (2) the statements were made in the course of business or transaction for which the agent was employed (*see Loschiavo v Port Auth. of N.Y. & N.J.*, 58 NY2d 1040, 1041 [1983]; *Candela v City of New York*, 8 AD3d 45, 47 [2004]; *and see Navedo v 250 Willis Ave. Supermarket*, 290 AD2d 246 [2002]). Both of these factors are present here. Ms. Flanagan was assigned by Providence Rest to prepare the report for a state agency, and in doing so she interviewed Veronica Douglas (who assisted Ms. Demuth after

she was injured) and a number of other nurses. As a result of her injuries, Flanagan compiled her report. In the report she stated:

> "My findings of the event in the fall of resident Anna Demuth, who sustained a fracture of the femur and multiple bruises to the upper and lower right extremities, are that Becky Akosah, who was assigned to the resident and showered her, dropped her. The care of Anna Demuth by CNA Becky Akosah resulted in negligence to the resident."

The dissent challenges Ms. Flanagan's report, characterizing it as being based upon what she "heard," and cites *Brusca v El Al Israel Airlines* (75 AD2d 798, 800 [1980]) to support its position.

However, the facts and holding in *Brusca* support a finding that the statements in the Flanagan report are admissible "admissions." *Brusca* involved a construction accident. At trial the foreman testified "that he had had a conversation with a police officer at the scene" (*id*. at 799). When asked whether he remembered giving specific quoted details to the officer, the foreman stated that he did not remember stating those facts. Plaintiff then called the police officer to the stand and elicited that the foreman made the quoted statements. The court then gave a limiting instruction that the quoted statements could not be considered as proof of any fact.

On appeal, plaintiff argued that it was error for the court to have precluded the jury from considering the quoted details of the accident for their truth. The Second Department agreed, stating:

> "The fact that a particular *admission* is apparently not based on personal knowledge of the occurrence described, but rather only upon information gleaned from others, is no bar to its admission into evidence. . . . 'Since an admission of a party made out of court is in itself hearsay, receivable in evidence under a definitely recognized exception to the hearsay rule, its competency or relevancy cannot be affected by the question whether the party making it had personal knowledge or merely information as to the fact admitted. In other words the law does not distinguish for the purposes of admissibility and relevancy between hearsay statements based on knowledge and hearsay statements based on other

hearsay.' Only if [the foreman's] alleged statement had been to the effect that he heard that the accident occurred in the manner he described, would the evidence have been inadmissible, 'as then it would only have amounted to an admission that he had *heard* the statement which he repeated and not to an admission of the facts included in it. That would have been in no sense an admission of any fact pertinent to the issue, but a mere admission of what he had heard without adoption or indorsement' " (*Brusca*, 75 AD2d at 800 [initial emphasis supplied and citations omitted]).

Here, Ms. Flanagan, the supervising nurse at Providence Rest, investigated Ms. Demuth's accident. She spoke with nurses on duty on the morning of the incident, some of whom had personally attended to Ms. Demuth. Flanagan based her conclusions upon those interviews, and from Ms. Akosah's own acknowledgment that she was moving Ms. Demuth alone. Ms. Flanagan's conclusions constituted an admission that Ms. Demuth had not been transferred safely, and in violation of hospital protocol. Her report is uncontested, and it is not "unindorsed" testimony as to what she heard. Thus, under *Brusca*, it is admissible, and constitutes an "admission" that her employer had not properly cared for Ms. Demuth and violated the protocol set forth in its Accountability Book. Providence Rest's negligence flows from its failure to ensure that its patient received the proper level of care, i.e., being safely transferred by more than one person.

Nurse Fitzgerald also prepared a written statement. While, as noted, some of the information collected by Nurse Fitzgerald was hearsay, her report was also part of the nursing home's investigation and was properly considered in support of the summary judgment motion as an "admission" that her employer, the nursing home, had breached its rules (*Loschiavo*, 58 NY2d at 1041; *Candela*, 8 AD3d at 47; *Navedo*, 290 AD2d at 247), and been negligent in its care of Ms. Demuth.

A substantial portion of the deposition testimony of Ms. English, Ms. Akosah's supervisor on the date of the incident, was admissible direct evidence which strongly inculpated Providence Rest (CPLR 3117 [a]). English testified that she supervised Akosah on the morning of the incident. She recounted giving Akosah the Accountability Book, telling her that if she had any questions she should feel free to ask them. Although English did not know exactly how the accident happened, she testified

that after the incident she and Nurse Douglas moved Ms. Demuth from the wheelchair back into bed. This testimony, along with Ms. Demuth's chart from the nursing home's Accountability Book, conclusively established the nursing home's negligence.

There is no question that Ms. Demuth's condition, as detailed in the Accountability Book, required the nursing home to ensure that Ms. Demuth be transferred by two people "and/or a lifter." The only inference that can be drawn from the parties' submissions was that Ms. Demuth was injured while being moved in an unsafe manner and in violation of the nursing home's own protocol. That Ms. Akosah's statement does not detail exactly how the accident happened is not determinative as to the nursing home's negligence. In her statement, which was legitimate for the court's consideration as an "admission against interest" (58 NY Jur 2d, Evidence and Witnesses §§ 275, 341), Ms. Akosah concedes that she was transferring Ms. Demuth alone. This constituted a breach of the nursing home's duty to provide Ms. Demuth, a high-risk patient, with the designated level of care.

The dissent misperceives the scope of our inquiry on this appeal. We cannot presuppose that the existence of a third-party complaint had an effect upon the motion court's determination of plaintiff's motion against Providence Rest. Further, we must decide this appeal based upon the record before us, and not upon speculation as to the effect our decision may have on the third-party action, which is still in the early stages of discovery.

The dissent states that "viewed solely as a motion for summary judgment against Akosah, the granting of the motion was improper." This is curious, given that there has been no motion for summary judgment against Akosah; the only motion was for summary judgment against defendant Providence Rest. On this appeal we are determining whether the motion court properly concluded that there was sufficient evidence to establish that Providence Rest was negligent as a matter of law. The record supports the motion court's determination on this question.

The nursing home's negligence stems from the fact that the patient was injured while being moved/transferred by *one person*, in an unsafe manner, and in contravention of the requirements spelled out in Providence Rest's own Accountability Book. No one, including Ms. Akosah, contests the facts which establish Providence Rest's liability as a matter of law.

On the issue of whether the third-party defendant's rights were compromised, it bears repeating that while the only issue

before the court was the nursing home's alleged negligence, Ms. Akosah did appear to oppose plaintiff's motion. Her counsel declared that Ms. Akosah did not admit to the facts contained in "the statement allegedly written by her," but Akosah did not provide any alternate explanation of what transpired while the decedent was in her care. This may have been a strategic decision, given that the third-party action was in the preliminary stages of discovery. However, Ms. Akosah did have an opportunity to state, if true, that she was working with another person, and to explain, if she had relevant knowledge, how the decedent was injured.

Finally, the dissent incorrectly concludes that evidence admitted on the present motion was admitted against Ms. Akosah. Ms. Akosah is not a party to the main action and her liability was not at issue in the order appealed. Further, Ms. Akosah's rights in the third-party action have not been irreparably compromised by our affirmance of plaintiff's motion for summary judgment against Providence Rest. Ms. Akosah will have the opportunity to conduct discovery and engage in motion practice with respect to the third-party claim. She also will have the opportunity to present her version of the facts, and to counter any admissible allegations of her negligence. Her liability is not inextricably tied to a finding that the nursing home was negligent for not caring properly for Ms. Demuth, in breach of its own protocol regarding the level of assistance required for Ms. Demuth's transfer. However, it is not for this Court to surmise as to issues outside the record presently before us. Accordingly, given that plaintiff submitted sufficient admissible evidence to establish Providence Rest's liability as a matter of law, and the opponents did not come forward with evidence raising a triable issue of fact, the court properly granted plaintiff's motion.

Accordingly, the order of the Supreme Court, Bronx County (Anne E. Targum, J.), entered August 11, 2004, which granted plaintiff's motion for partial summary judgment on the issue of liability against defendant Providence Rest Nursing Home, should be affirmed, without costs.

McGUIRE, J. (dissenting). I respectfully dissent. Third-party defendant Becky Akosah (Akosah) opposed plaintiff's motion for partial summary judgment against defendant and third-party plaintiff Providence Rest Nursing Home (Providence) and defendant Health Care Professionals, Inc. (HCP), and is aggrieved by that portion of the order granting summary judgment to

plaintiff against Providence on the issue of Providence's liability under the doctrine of respondeat superior for injuries sustained by plaintiff's decedent, Anna Demuth, as a result of alleged negligent actions by Akosah.[1] Accordingly, Akosah is entitled to appeal from at least that portion of the order (*see* CPLR 5511; *Cabri v ICOS Corp. of Am.*, 240 AD2d 456, 457 [1997]; *see also* CPLR 1008 ["The third-party defendant shall have the rights of a party adverse to the other parties in the action, including the right to . . . appeal"]). Like her right to oppose plaintiff's motion, Akosah's right to prosecute this appeal reflects the "recogni[tion] that the third-party defendant, having been joined as a party who will thereby be bound by the judgment in the main action, will have no other opportunity to establish the absence of liability of the main defendant to the plaintiff" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1008, at 119).

With one exception, plaintiff's motion for summary judgment rested entirely on hearsay; specifically, it rested on statements assertedly made by Ms. Demuth after she allegedly fell that were recorded by employees of Providence who were not witnesses to the fall. If a person who swore to having heard the statements provided plaintiff with an affidavit reciting them, these out-of-court statements by Ms. Demuth blaming Akosah and offered for the truth of the matters asserted could not serve as a proper predicate for plaintiff's summary judgment motion (*La Plante v State of New York*, 31 AD2d 570, 570-571 [1968], *affd* 28 NY2d 575 [1971]). The hearsay character of these statements is not altered merely by the fact—if indeed it is one—that the employees of Providence who recorded them were under a business duty to record them accurately (*Matter of Leon RR.*, 48 NY2d 117, 123 [1979]; *see also Brusca v El Al Israel Airlines*, 75 AD2d 798, 800 [1980] [alleged statement by defendant's employee "to the effect that he had *heard* that the accident occurred in the manner he described" would be inadmissible hearsay " 'as then it would only have amounted to an admission that he had *heard* the statement which he repeated and not to an admission of the facts included in it' " (emphasis added)], quoting *Reed v McCord*, 160 NY 330, 341 [1899]).

In opposition to plaintiff's motion, Akosah submitted only an affirmation from her attorney. In her affirmation, counsel pointed to a handwritten account allegedly given by Akosah to

---

1. Although the caption in the main action refers to plaintiffs, there is only one plaintiff, Nancy Giandana, who assertedly brings the action both individually and as the administratrix of the estate of Ms. Demuth.

Providence that was reproduced in an exhibit to plaintiff's motion. In that statement, counsel correctly observed that Akosah never gave "any indication . . . that [Ms. Demuth] was either dropped to the floor, fell on the floor or that . . . Akosah fell on top of her." Indeed, a fair reading of the statement is that Akosah assisted Ms. Demuth on the day in question, did not see her fall or otherwise sustain any injuries, and merely knew that an injury somehow had occurred earlier in the day.

If Akosah had put forth her own out-of-court and unsworn statement in opposing the motion, it would have been hearsay. And it would have been insufficient, because hearsay alone is insufficient to demonstrate the existence of a triable fact (see *Navedo v 250 Willis Ave. Supermarket*, 290 AD2d 246, 247 [2002]). That Akosah's written statement was included as an exhibit to plaintiff's motion did not justify Akosah's reliance on it to establish a material issue of fact. That is because plaintiff did not take the position it was an admission by Akosah of the truth of the matters asserted therein. Rather, plaintiff's position was that the statement was relevant only to her claim for punitive damages. Thus, plaintiff's motion contended that Akosah caused Ms. Demuth to go untreated for more than one hour as a result of her false denials shortly after the incident (evidenced by her statement) of her negligence (evidenced by the other proof offered in support of the motion). Accordingly, because plaintiff did not assume the truth of the matters asserted in the statement, Akosah could not assume their truth either.[2]

With the procedural history and posture of this action in mind, the exception noted above can be discussed more profitably. In her motion, plaintiff placed considerable reliance upon a

---

2. Although the affirmation from Akosah's counsel does not explain why an affidavit from Akosah was not submitted, counsel apparently believed plaintiff was offering Akosah's out-of-court statements for the truth of the matter asserted. That belief was reasonable, especially given that plaintiff did not make clear until she filed her reply papers on the motion that she was disclaiming reliance on the statements as an admission by Akosah. Moreover, it is worthy of note that plaintiff's summary judgment motion was brought only three months after the date of Providence's third-party complaint against Akosah and less than one month after the date of Akosah's answer to the third-party complaint. By contrast, the motion was brought against Providence (and served of course on Akosah) some two years and three months after the date of plaintiff's original complaint against Providence. Akosah had virtually no opportunity to engage in discovery prior to opposing plaintiff's summary judgment motion; plaintiff and Providence had engaged in extensive discovery during the more than two years following the filing of the original complaint.

report prepared by Eleanor Flanagan, RN, Providence's Director of Nursing. Similarly, the decision of the court below, concluding that plaintiff had established there was no material issue of fact that would preclude summary judgment for plaintiff on Providence's liability for Akosah's alleged negligence, is predicated almost entirely on Ms. Flanagan's report. In that report, Ms. Flanagan states that the injuries sustained by Ms. Demuth were caused by Akosah, "who was assigned to the resident and showered her [and] dropped her." Indeed, Ms. Flanagan goes on to opine on a question of law by concluding that "[t]he care of [Ms.] Demuth by . . . Akosah resulted in *negligence* to the resident" (emphasis added). Although it is not relevant to my analysis, Ms. Flanagan's report makes plain (and it is undisputed in any event) that she did not witness the alleged fall either and was herself relying at least in part (and perhaps exclusively) on the account provided by the resident, Ms. Demuth.[3]

As this Court has stated, "an agent's written report, made within the scope of his duties, has been received in evidence against his principal even though the report was not based upon the agent's personal knowledge" (*Georges v American Export Lines*, 77 AD2d 26, 33 [1980]; *see also Cianci v Board of Educ. of City School Dist. of City of Rye*, 18 AD2d 930 [1963]). Of course, however, the agent's statement "is admissible against his employer under the admissions exception to the hearsay rule only if the making of the statement is an activity within the scope of his authority" (*Loschiavo v Port Auth. of N.Y. & N. J.*, 58 NY2d 1040, 1041 [1983] [citations omitted]).

Although Ms. Flanagan was authorized to speak on this very matter by her employer, Akosah is neither her employer nor otherwise her principal. Accordingly, Ms. Flanagan's statements are not admissions by Akosah and could be admissible against her only if some other hearsay exception were applicable or if principles of judicial economy warranted their admission despite the prejudice to Akosah. Unsurprisingly, plaintiff advances no such independent exception and I am not aware of any authority supporting the admission of Ms. Flanagan's state-

3. It is not necessary to the resolution of this appeal to determine whether Ms. Flanagan's conclusion on the ultimate issue of negligence was admissible against Providence (*cf. Eagleston v Guido*, 41 F3d 865, 874 [2d Cir 1994], *cert denied* 516 US 808 [1995] [extrajudicial statements by municipal official amounting to "legal conclusions concerning an ultimate issue in the case" not admissible against municipality as a party admission under Federal Rules of Evidence rule 801 (d) (2)]).

ment against Akosah on judicial economy grounds (i.e., on the ground that they are admissible against Akosah because they are admissible against Providence).

In short, although the parties do not cite any decision of this Court or any other court squarely addressing the issue, the out-of-court statements by Ms. Flanagan when offered against Akosah were nothing more than hearsay (*Rivera v City of New York*, 293 AD2d 383 [2002] [neither statements by mother nor father of infant plaintiff were admissions]; *cf. Candela v City of New York*, 8 AD3d 45, 48 n 2 [2004] [noting, in reversing trial court and concluding that out-of-court statement by agent of defendant general contractor was admissible on plaintiff's summary judgment motion against general contractor and other defendants, that "(n)one of the (other) defendants have argued that (general contractor) is the only true principal"]).

The admission of Ms. Flanagan's statements against Akosah is inconsistent with the rationale justifying the exception to the hearsay rule for admissions by opposing parties. That rationale, of course, is that an extrajudicial statement by a party-opponent which is inconsistent with the party's position in the litigation is presumptively reliable (*see Reed v McCord*, 160 NY 330, 341 [1899] ["it is highly improbable that a party will admit or state anything against himself or against his own interest unless it is true"]).

The burden of explaining an admission properly is cast upon the party making it rather than the opponent who seeks to introduce it. Even if Akosah had been able to depose Ms. Flanagan, it hardly would be fair to cast upon her the burden of explaining Ms. Flanagan's report. Although Ms. Flanagan had a duty to her employer, Providence, to investigate and report accurately on the cause of the injuries sustained by Ms. Demuth, she owed no such duty to Akosah (*cf. Cox v State of New York*, 3 NY2d 693, 698 [1958] [rejecting admissibility of "so-called admission . . . not made by a party but . . . by (one) who has no interest in the outcome of the litigation and thus has no incentive to carefully check the correctness of the statements he makes"]). Indeed, Akosah's interests are adverse to those of both plaintiff and Providence. As noted above, moreover, CPLR 1008 specifies that a "third-party defendant shall have the rights of a party adverse to the other parties in the action."

To admit against a third-party defendant an extrajudicial statement made by either a defendant/third-party plaintiff or its authorized agent when the interests of the third-party plaintiff

and third-party defendant are adverse could encourage mischief and unreliable factual determinations. Consider what third-party plaintiffs reasonably might conclude in some cases involving actual or prospective third-party defendants with deep or at least not empty pockets. A particular third-party plaintiff might conclude that its best prospect for avoiding or reducing its monetary exposure to the plaintiff is to acquiesce in the plaintiff's claim that it is liable as long as the third-party defendant also will be bound by such a liability determination. The third-party plaintiff thus would have an incentive not only hastily and even falsely to "admit" its liability but to defer bringing its third-party complaint until the plaintiff's summary judgment motion is imminent, thereby reducing and perhaps devastating the third-party defendant's ability to defend its interests. At least some plaintiffs also would have incentives to cooperate with such a strategy by the defendant/third-party plaintiff.[4]

Of course, neither plaintiff nor defendant/third-party plaintiff will act invariably in such an improper or sharp manner. A plaintiff's right to introduce admissions made by the defendant should not be defeated simply because the interests of the third-party plaintiff and third-party defendant are adverse.

The novel issue presented here is what the trial court should have done given the third-party complaint. Viewed solely as a motion for summary judgment against Providence, the granting of the motion was proper. Plaintiff made a "prima facie showing of entitlement to judgment as a matter of law" on the issue of liability, having "tender[ed] sufficient evidence [the admissions by Providence's authorized agent, Ms. Flanagan] to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). However, viewed

---

4. It is worthy of note that Providence's opposition was premised entirely on the contention that Akosah was an independent contractor and thus it was not liable for her conduct, which Providence asserted both was negligent and was as described in the out-of-court statements made by Ms. Demuth. Moreover, Providence did not commence its third-party action against Akosah for more than two years after plaintiff commenced the action against it, despite its apparent awareness on the date of the alleged fall of all the relevant facts concerning the conduct by Akosah it contends was negligent. I do not conclude, however, either that Providence's opposition to plaintiff's summary judgment motion reflected anything other than an honest appraisal of its legal position on the facts known to it, or that it intentionally delayed its third-party action in an attempt to prejudice Akosah. Providence has not been asked to explain either its position or the delay, and it obviously would be unfair to assume it acted improperly.

solely as a motion for summary judgment against Akosah, the granting of the motion was improper. Because plaintiff movant failed to meet its "initial burden of setting forth evidentiary facts sufficient to establish entitlement to judgment as a matter of law" (*Roman v Hudson Tel. Assoc.*, 15 AD3d 227, 228 [2005]), there was "no necessity for the opposing party [Akosah] to respond with evidentiary proof" (*id.* [citation omitted]).

Put differently, the question might be: what effect, if any, should be given to the prior strategic decisions made by the parties to the main action? Plaintiff could argue that the motion should be viewed as having been brought against Providence and that her right to summary judgment against Providence should not be affected adversely by Providence's unilateral decision to commence a third-party action against Akosah. Akosah, however, could argue that the motion should be viewed as having been brought against her, and that her right to a trial on the issue of her negligence should not be affected adversely by plaintiff's unilateral decision to commence the main action against Providence only. Indeed, Akosah could argue as well that as the only party *not* to have made such a prior strategic decision, she should not be the party whose rights should be adversely affected by the particular procedural posture of the case.

In any event, in my judgment, CPLR 1010 provides the answer to the question of what the trial court should have done. It authorizes the court, inter alia, to "order a separate trial of the third-party claim or of any separate issue thereof, or make such other order as may be just." Moreover, as CPLR 1010 goes on to provide, "[i]n exercising its discretion, the court shall consider whether the controversy between the third-party plaintiff and the third-party defendant will . . . prejudice the substantial rights of any party."

If the court had issued an order both granting plaintiff's motion for summary judgment and directing a separate trial of the third-party claim, the substantial rights of plaintiff and Akosah would have been preserved. This Court, as a division of the Supreme Court, is authorized to take whatever action the court below should have taken in resolving the summary judgment motion (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]).

In my opinion, the order that would "be just" (CPLR 1010) that the court should have made is an order granting plaintiff's motion for summary judgment and ordering "a separate trial of

the third-party claim" (*id.*). Accordingly, I would modify the order appealed to the extent of severing the third-party action and otherwise affirming the grant of summary judgment to plaintiff. I note that such a modification also would comport with the principle that an appellate court should not grant relief to a nonappealing party unless it is necessary to the granting of full relief to an appealing party (*see Sharrow v Dick Corp.*, 86 NY2d 54, 62 [1995]; *Hecht v City of New York,* 60 NY2d 57, 62 [1983]).

That is not to say, however, that a third-party defendant in Akosah's position can never be required to come forward and lay bare its proof with evidentiary facts. After all, impleader conserves both public and private resources, and avoids inconsistent adjudications. Given the unique facts of this case—the ambiguity in plaintiff's motion concerning whether Akosah's out-of-court statements were being offered for the truth of the matters asserted and the timing of the summary judgment motion relative to the filing of the third-party complaint against Akosah—I would sever the third-party action without prejudice to a subsequent motion to consolidate if Akosah's negligence is established by Providence.

The majority's various arguments on the hearsay issues presented by this case are irrelevant. The majority's extended discussion of the "speaking agent" exception to the hearsay rule and *Brusca v El Al Israel Airlines* (75 AD2d 798 [1980]) is irrelevant. I have no quarrel with the notion that under the "speaking agent" exception to the hearsay rule the statements of Ms. Flanagan can be admissions regardless of whether they are based on her personal knowledge. The crucial point, one the majority does not even mention let alone discuss, is that at most those statements would constitute admissions of Ms. Flanagan's employer and principal, Providence, and not Akosah. The "speaking agent" here is not an agent of Akosah but an agent of a principal that is seeking to cast liability on Akosah.

The majority's reliance on Nurse Fitzgerald's written statement as an admission by her employer, Providence, is irrelevant for the same reason. As to Akosah, it is hearsay. The majority's argument that it also was admissible as a "business record" of Providence is both wrong and irrelevant. The only relevant statements in the statement are those made by Ms. Demuth and recorded by Nurse Fitzgerald. The venerable rule of *Johnson v Lutz* (253 NY 124 [1930]) bars the admission of the statements by Ms. Demuth (*see e.g. Matter of Leon RR.*, 48 NY2d

117, 122 [1979] ["each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception" (citations omitted)]).[5] I note, moreover, that the statements by Ms. Demuth do not in any event identify Akosah as the one who allegedly fell on her. The other statements in Nurse Fitzgerald's written statement certainly appear to be admissible under the "business record" exception to the hearsay rule, but they do not have the slightest relevance to the question of whether Providence or Akosah negligently caused the injuries to Ms. Demuth.

In relying on the deposition testimony of Ms. English, the majority indulges in what can only be described, albeit with understatement, as impressive hyperbole. After summarizing the deposition, the majority concludes that it, along with the chart from Providence's Accountability Book, "conclusively established the nursing home's negligence." In fact, it establishes nothing at all bearing on Providence's negligence. Indeed, although the majority states in referring to that testimony that Ms. English "did not know *exactly* how the accident happened" (emphasis added), Ms. English did not have any personal knowledge at all about how the accident happened, and did not give any testimony establishing that an accident had occurred that was caused by Providence's negligence. Her only testimony relating to an accident was premised exclusively on the hearsay statement of Ms. Demuth—"reported to" Ms. English by the "incoming nurse"—that Ms. Demuth "had called her and told her that someone had dropped her and fell on top of her." Obviously, a patient in a nursing home can get out of bed and fall on his or her own, and the hearsay statement of Ms. Demuth does not establish, let alone conclusively establish, even that someone had dropped her and fallen on her. For the same reason, it does not establish anything about the cause of the injuries to Ms. Demuth, and certainly not that Ms. Demuth "had not been transferred safely . . . in violation of hospital protocol."

Like the majority's reliance on Ms. Flanagan's report and Nurse Fitzgerald's written statement, the majority's reliance on the deposition testimony of Ms. English is irrelevant. Ms. English's deposition testimony unquestionably would be admissible against defendants Providence and HCP, because these parties were present at her deposition, taken by plaintiff, and

---

5. Plaintiff has never argued, nor does the majority suggest, that the statements by Ms. Demuth pass muster under some other hearsay exception.

their representatives cross-examined Ms. English. Akosah, however, was not represented by anyone at the deposition for the simple reason that Providence had not yet brought its third-party action against her. Regardless of whether the attorneys for Providence and HCP believed that vigorous cross-examination of Ms. English would further the interest of their clients,[6] it cannot be doubted that Akosah's attorney might have concluded it was a matter of some moment. In short, the majority's reliance on the deposition testimony of Ms. English serves only to underscore the importance of resolving the novel issue presented by these unusual circumstances: whether, given that Akosah would be bound by the determination that Providence was liable for the injuries to Ms. Demuth because of Akosah's alleged negligence, the motion for summary judgment should be viewed as one against Akosah that was premised solely on hearsay.

The majority's reliance on Akosah's own statement is confounding. According to the majority, "her statement . . . was legitimate for the court's consideration as an 'admission against interest'" (citation omitted). The short and complete answer to that is the one previously given by plaintiff in her reply submission on the motion. As noted above, plaintiff made clear she was not relying on the statement for the truth of anything asserted therein and expressly stated that "plaintiff did not rely upon [the Akosah] statement in support of her motion for summary judgment . . . ." Indeed, and ironically given the majority's reliance on Nurse Fitzgerald's written statement and the deposition testimony of Ms. English, plaintiff's counsel immediately went on to state that it relied not upon the Akosah statement "but rather the statement of Defendant, Providence Rest Nursing Home, Director of Nursing, Eleanor M. Flanagan [i.e., the Flanagan report]."[7]

Thus, the majority changes the rules in the middle of the game. Despite plaintiff's express disavowal in prior proceedings of any reliance on the Akosah statement for the truth of mat-

---

**6.** Perhaps not coincidentally, counsel for Providence posed only four questions to Ms. English (one of which asked her if she had understood the prior question) and the deposition occurred less than three months before the date of Providence's third-party complaint against Akosah.

**7.** This irony is compounded by what plaintiff's counsel went on to state after quoting from the Flanagan report: "This admission, relied upon by Plaintiff in support of her motion for summary judgment is not that of the Third-Party Defendant, Becky Akosah, but rather that of the answering Defendant, Providence Rest Nursing Home." Just so.

ters asserted therein, the majority relies on it as an admission "which was legitimate for the court's consideration."

Even if that were permissible for some inexplicable reason, the majority's reliance on the statement would still be misplaced. According to the majority, the statement can fairly be read to constitute an admission by Akosah of "a breach of the nursing home's duty to provide Ms. Demuth, a high-risk patient, with the designated level of care." This is ostensibly so because in the statement Akosah effectively "concedes that she was transferring Ms. Demuth alone." But putting aside for the moment that the statement concedes no such thing, that conduct— breach of duty though it may be—did not cause any injury to Ms. Demuth. Ms. Akosah, after all, does not go on to state that Ms. Demuth fell while she was "transferring" her. Moreover, even assuming that the statement can be considered substantively, for the truth of matters asserted therein, Akosah conceded only that she attempted to transfer Ms. Demuth without assistance from her bed to a chair she placed "right to the end of the bed on the left side." When Ms. Demuth stated she "couldn't make it to the chair," Akosah stated she asked a nurse to help her put Ms. Demuth "in the chair of [*sic*] which we did."[8]

Finally, or nearly so, the majority both misses the point and contradicts itself in: (1) stating that this appeal must not be decided "upon speculation as to the effect [its] decision may

---

8. To repeat, on any fair reading of the statement as a whole, Akosah was saying that although she assisted Ms. Demuth, she did not see her fall or know how she sustained any injuries. Thus, if the majority were correct in considering the statement for its truth, the grant of summary judgment should be reversed because plaintiff's own motion papers thereby would raise a material issue of fact with respect both to how Ms. Demuth's injuries were caused and who caused them (*see e.g. Oliverio v Lawrence Pub. Schools,* 23 AD3d 633, 634 [2005] [summary judgment movants' own submission demonstrated the existence of material issues of fact precluding grant of motion]; *see also Speller v Sears, Roebuck & Co.,* 100 NY2d 38, 44 [2003] ["the court's role in adjudicating a motion for summary judgment . . . is issue identification, not issue resolution"]). To this, the majority offers no response. Nor does the majority dispute that Akosah's counsel reasonably may have believed that plaintiff had offered Akosah's alleged out-of-court statements for the truth of the matters asserted. And despite its apparent recognition that Akosah had virtually no opportunity to engage in discovery, the majority faults Akosah for failing "to explain, if she had relevant knowledge, how the decedent was injured." The majority thus ignores the critical point: if it is proper to consider Akosah's statements for the truth of the matters asserted, what she *is* asserting is precisely that she had no relevant knowledge of how Ms. Demuth was injured. And if that is true, why Akosah nonetheless is liable for Ms. Demuth's injuries is a puzzlement.

have on the third-party action," (2) pronouncing it "curious" to conclude that the grant of summary judgment was improper if viewed solely as a motion against Akosah, because "the only motion was for summary judgment against defendant Providence," and (3) its various assertions to the effect that Akosah's "liability [is] not at issue in the order appealed," "[her] rights in the third-party action have not been irreparably compromised by . . . affirmance of plaintiff's motion for summary judgment against Providence," Akosah "will have the opportunity to conduct discovery . . . to counter any admissible allegations of her negligence" and her "liability is not inextricably tied to a finding that the nursing home was negligent for not caring properly for Ms. Demuth."

The majority contradicts itself, for it correctly recognizes elsewhere in its opinion that Akosah "is an aggrieved party, and under CPLR 1008, she has a right to appeal." If the consequences for Akosah of the grant of summary judgment are as benign as the majority posits, two things are "curious" indeed: (1) that the Legislature would accord third-party defendants the right to appeal under these circumstances, and (2) that Akosah would go to the time, trouble and expense of appealing to this Court.

The consequences to Akosah both of the grant of plaintiff's motion for summary judgment in the main action and of affirmance by this Court are not benign. To the contrary, as the Practice Commentaries previously quoted state—and with respect to which the majority offers no comment—Akosah's right to prosecute this appeal reflects the "recogni[tion] that the third-party defendant, having been joined as a party who will thereby be bound by the judgment in the main action, will have no other opportunity to establish the absence of liability of the main defendant to the plaintiff" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1008, at 119). In this case, the "judgment" in the main action at issue is the order granting summary judgment and determining that Providence is liable to plaintiff; that order, in turn, rests on two essential, actually litigated determinations: (1) that Akosah negligently caused Ms. Demuth's injuries, and (2) that Providence was Akosah's employer and thus is responsible for her tortious conduct under the doctrine of respondeat superior. Akosah is not aggrieved by the second determination, but she is aggrieved by the first because collateral estoppel principles will preclude her from relitigating that issue in Providence's action

against her after she litigated and lost exactly that issue in opposing plaintiff's motion (*see e.g. Ryan v New York Tel. Co.,* 62 NY2d 494, 500 [1984] ["(t)he doctrine of collateral estoppel . . . precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity"]; *id.* at 500-501 [to be given preclusive effect, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein . . . and it must be the point actually to be determined in the second action or proceeding" (citations omitted)]). If no court had expressly so held, that would make the issue in this case all the more novel. But it would not undermine the conclusion that Akosah will be bound by what was necessarily determined on the motion.

One last point should be made. "Article I, § 2 of the New York Constitution provides that '[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever' " (*Matter of DES Mkt. Share Litig.,* 79 NY2d 299, 304 [1992]). Although the entry of summary judgment against a litigant hardly establishes a violation of that constitutional right, "[s]ince it deprives the litigant of his day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (*Andre v Pomeroy,* 35 NY2d 361, 364 [1974] [citation omitted]). To grant summary judgment against Providence and thereby deprive it of its day in court solely on the basis of hearsay clearly would be improper (*see Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]; *Republic Natl. Bank of N.Y. v Luis Winston, Inc.,* 107 AD2d 581 [1985]). Yet, the majority countenances depriving Akosah of her day in court solely on the basis of hearsay, even though she had virtually no opportunity to exercise her rights to engage in discovery. To be sure, there is nothing improper about applying the collateral estoppel doctrine to a litigant who was not a party to the prior action even though the litigant thereby is deprived of his day in court. But doing so is proper, precisely because the party to the prior action who litigated the issue and lost had a full and fair opportunity to litigate the issue and the collaterally estopped litigant is sufficiently aligned in interest with the losing party in the prior action as to be in "privity" with the losing party (*see Buechel v Bain,* 97 NY2d 295, 304-305 [2001], *cert denied* 535 US 1096 [2002]). Here, in utter contrast, only Providence and not Akosah had a full and fair opportunity to litigate the sum-

mary judgment motion, and the interests of Providence and Akosah are adverse in material respects.[9]

In sum, nothing in the majority's analysis undercuts my conclusion that under the unusual circumstances of this case the order from which Akosah but not Providence appeals should be modified to the extent of severing the third-party action and otherwise affirmed.

TOM, J.P. and CATTERSON, J., concur with MAZZARELLI, J.; FRIEDMAN and McGUIRE, JJ., dissent in a separate opinion by McGUIRE, J.

Order, Supreme Court, Bronx County, entered August 11, 2004, affirmed, without costs.

---

**9.** I recognize of course that it will be open to Akosah in subsequent proceedings to argue that she is not collaterally estopped from relitigating the determination that she negligently caused Ms. Demuth's injuries on the ground that she did not have a full and fair opportunity to litigate the issue (*see Buechel v Bain,* 97 NY2d at 304). It will be her burden, however, to show that she did not have such an opportunity (*id.*). Absent a determination by this Court to the effect that she did not, she well may find it difficult to meet that burden. She should not, in any event, have to shoulder it.